UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KIMBERLY A. WHEELER, | : | |
| | | Case No. 3:14-cv-73 |
| Plaintiff, | : | |
| | | Judge Thomas M. Rose |
| v. | : | |
| | | |
| MIAMI VALLEY CAREER TECHNOLOGY CENTER, | : | |
| | : | |
| Defendant. | | |

**ENTRY AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT MIAMI VALLEY CAREER TECHNOLOGY CENTER (DOC. 12)**

This case is before the Court on the Motion for Summary Judgment of Defendant Miami Valley Career Technology Center ("Miami Valley") (Doc. 12). Plaintiff Kimberly Wheeler ("Wheeler"), a teacher at Miami Valley, alleges that she was denied a promotion to an Academic Supervisor position on the basis of her sex and asserts a claim for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e). Miami Valley's Motion for Summary Judgment on that claim has been fully briefed and is ripe for the Court's review. For the reasons discussed below, the Court **GRANTS** the Motion for Summary Judgment.

I. BACKGROUND

Wheeler is a teacher certified in math, chemistry, physics, biology and general science. (Doc. 11-1 at 12, 45.) Over the past twenty-eight years, Wheeler has been employed by Miami Valley, where she has taught over twenty different courses. (*Id.*) Wheeler received a bachelor's degree in secondary education from Wright State University in 1987 and a masters' degree in

1

educational administration and leadership from the University of Dayton in 2001. (*Id.* at 9-10.)

Miami Valley is an educational institution that provides vocational training and education to high school juniors and seniors and other adults. (Doc. 11-2 at 10-11.) It serves the Miami Valley Career Technology Vocational District, which is separately funded and comprises 27 local school districts in Southwest Ohio. (*Id.*) The District's board of education is made up of school board representatives from 17 of these 27 local districts. (*Id.* at 13.)

In June 2012, Kevin Lacey, Miami Valley's business manager and personnel director, posted openings for two Academic Supervisor positions for the following school year. (Doc. 11-2 at 5, 39-40.) Academic Supervisors are responsible for overseeing academic programming, staff and budgets. (Doc. 11-3 at 5.) Their duties include providing leadership for the improvement of instruction, observing and appraising teachers, coordinating curriculum development and improvement, coordinating advisory committees, preparing departmental budgets and recommending appropriations, coordinating and performing individual program reviews, conducting departmental staff meetings, and performing public relations activities. (Doc. 11-2, Ex. D.)

The posting for the Academic Supervisor positions set forth the following qualifications:

1. Must meet all requirements governing teacher education and certification

2. Must hold a bachelor's and master's degree

3. Hold or qualify for a supervisor's certificate

4. Completed a minimum of three years of successful teaching

5. Possess knowledge of the principles and practices of school administration and of current educational trends in curriculum and instruction

6. Ability to manage fiscal, physical, and human resources to successfully adapt to rapidly changing demands in terms of program requirements

   7. Ability to establish and maintain effective working relationships with staff, students, and the community

   8. The ability to communicate effectively, both orally and in writing

(Doc. 11-2, Ex. C.)

Lacey reviewed the applications that he received and selected a smaller group of candidates, including Wheeler, to be interviewed for the Academic Supervisor positions. (*Id.* at 16-17; Doc. 11-3 at 32.) Lacey interviewed Wheeler for about an hour and fifteen minutes, during which she responded to questions and asked a couple questions about the position. (Doc. 11-1 at 65.) After the first round of interviews was complete, Lacey selected four finalists for a second interview. (Doc. 11-2 at 17, 69; Doc. 11-3 at 47.) Wheeler was not one of the four finalists. (Doc. 11-1 at 120.)

The four finalists were two current Miami Valley teachers and chairpersons of their departments: both males, Eric Dolan and Charles Brads; and two outside candidates: a male, Christopher Caldwell, and a female, Beth Manor. (Doc. 11-3 at 34; Doc. 11-2 at 20-21.) Interviews of the four finalists were conducted by Nicholas Weldy, the newly named Superintendent (and former Academic Supervisor), and Harold Niehaus, Miami Valley's Director of Instructional Development and the person to whom the new Academic Supervisors would report. (Doc. 11-2 at 17-18; Doc. 11-3 at 3-4, 34.) Lacey was also present at the interviews, but did not ask questions. (*Id.*) After the interviews, Weldy, Niehaus, and Lacey discussed the overall needs of the district and what each of the four finalists could offer. (Doc. 11-2 at 22-23.) Weldy testified that the interview team was looking for people who got along well with others, were flexible, had thick skin, could perform well under stressful conditions, and had the charisma to bring people together and build consensus. (Doc. 11-3 at 49.) Weldy, Niehaus, and Lacey all

agreed to recommend that Miami Valley's board of education hire Brads and Dolan for the Academic Supervisor positions. (*Id*. at 26.)

As discussed in more detail below, Miami Valley asserts that it decided not to promote Wheeler to Academic Supervisor in favor of more qualified candidates. Wheeler argues that Miami Valley's explanation is pretextual and that she was denied the promotion based on her sex.

On March 4, 2014, Wheeler filed the Complaint in this case, which contains a single cause of action for sex discrimination under Title VII of the Civil Rights Act of 1964. (Doc. 1 at 5.) Wheeler alleges that she was denied the promotion to Academic Supervisor because she is a woman and seeks an order awarding her the position of Academic Supervisor or an equivalent position, compensatory damages for lost pay, benefits and emotional distress, punitive damages, attorneys' fees, and prejudgment and post judgment interest. (*Id.* at 6.) On August 25, 2015, Miami Valley filed its Motion for Summary Judgment. (Doc. 12.) On September 25, 2015, Wheeler filed a Memorandum opposing the Motion for Summary Judgment, in response to which Miami Valley filed a Reply on October 8, 2015. (Docs. 14, 15.) The Motion for Summary Judgment is therefore fully briefed and ripe for the Court's review.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is denied when "there are genuine issues that can properly be resolved only by a finder of fact because they may be

resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d. 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party requesting summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party is able to make this showing, the burden shifts to the non-moving party who then has to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). After the burden has shifted, the non-moving party cannot rely solely on pleadings or merely reassert its previous allegations. *Celotex*, 477 U.S. at 324. Nor is it sufficient to argue that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

As it evaluates whether a material fact exists, the court assumes as true the evidence of the nonmoving party and draws all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. The mere existence of a scintilla of evidence in support of the moving party, however, is not sufficient to avoid summary judgment. *Id.* at 252. There must be enough evidence for the jury to reasonably find for the non-moving party. *Id.*

### III. ANALYSIS

Wheeler relies on circumstantial evidence to prove her claim for employment discrimination. Accordingly, the Court applies the three-step burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). "In the first step, the employee carries the initial burden of establishing a prima facie case of age discrimination; if the employee

meets this burden, the second step requires the employer to respond by articulating some legitimate, nondiscriminatory reason for the adverse employment action at issue." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802). "Third, assuming such a response is made, the employee then bears the burden of rebutting this proffered reason by proving that it was pretext designed to mask discrimination." *Id.*

Wheeler can establish a prima facie claim based on a failure to promote theory, she "must show that (1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Provenzano*, 663 F.3d at 812-13.

Miami Valley has assumed, for purposes of its Motion for Summary Judgment only, that Wheeler can establish a prima facie case. The Court therefore turns to the next stage of the inquiry—whether Miami Valley can articulate a "legitimate, nondiscriminatory reason" for why it did not promote Wheeler. *Provenzano*, 663 F.3d at 812. If Miami Valley does so, then Wheeler "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir.2007)).

"Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated remains at all times with the plaintiff." *Burdine*, 450 U.S. at 256. Wheeler's burden to demonstrate pretext in the final step "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* "In evaluating pretext and the plaintiff's ultimate burden, the court should consider all evidence in the light most favorable to the plaintiff, including the evidence presented

6

in the prima facie stage." *Provenzano*, 663 F.3d at 812 (citing *Peck v. Elyria Foundry Co.*, 347 Fed. Appx. 139, 145 (6th Cir. 2009).

### A. Miami Valley's Nondiscriminatory Reason For Not Promoting Wheeler

Miami Valley's nondiscriminatory reason for not promoting Wheeler is that "it chose to hire candidates it considered more qualified." (Doc. 12 at 9.) Specifically, Miami Valley asserts that it promoted Brads and Dolan, instead of Wheeler, to the Academic Supervisor positions because:

- Brads and Dolan had supervisory and administrative experience as Chairpersons of their academic departments, which Wheeler did not have (Doc. 12 at 10 (citing Doc. 11-3 at 10, 12-13; Doc. 11-2 at 54-55)); and

- Lacey had concerns about Wheeler's ability to successfully manage human resources, establish and maintain effective working relationships, and her ability to communicate effectively." (Doc. 12 at 11 (citing Doc. 11-2 at 69-70, 84, 86, 88 and Exs. C, D)).

Lacey's concerns stemmed from his interview of Wheeler during the hiring process. (Doc. 12 at 11; Doc. 11-2 at 69.) Lacey testified that Wheeler indicated that she had "some issues developing working relationships with staff" and said that she once "went off" on a supervisor following a drill at school. (Doc. 11-2 at 73-74.) By "went off," Lacey understood Wheeler to mean that she had lost her cool and been argumentative or aggressive towards her supervisor. (*Id.*) Lacey also testified that, in response to a question regarding how to deal with a subordinate who pushes back against her instruction, Wheeler said that she would tell the subordinate "you need to do [it] because I'm telling you to do it." (*Id.* at 75.) Lacey also testified that Wheeler described a situation where she had an issue with a staff member, which she resolved by going to the staff member's supervisor. (*Id.* at 76-78.) The way that Wheeler handled this situation concerned Lacey because he would expect an administrator to resolve a problem directly with a

7

staff member. (*Id.*) In addition, Lacey had minor concerns about Wheeler's ability to communicate effectively due to grammatical errors that she made during her interview and on her resume cover letter. (*Id.* at 79.)

Miami Valley's proffered reason for not promoting Wheeler meets its burden of production under the second step of the *McDonnell Douglas* framework. *See Provenzano*, 663 F.3d at 815 (defendant met burden under step two of *McDonnell Douglas* inquiry by presenting testimony that its decision not to promote plaintiff was based on her performance record); *White*, 429 F.3d at 245 (defendant met burden under step two of *McDonnell Douglas* by presenting evidence that it decided to hire a more qualified candidate).

### B. **Wheeler's Arguments That Miami Valley's Proffered Reason Is Pretextual**

"In the third and final stage of the *McDonnell Douglas* analysis, the presumption of discrimination is gone and the plaintiff must demonstrate that the employer's proffered nondiscriminatory reason was not the true reason for the employment decision, but rather a pretext for discrimination." *Provenzano*, 663 F.3d at 815. Wheeler can meet this burden "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)).

Wheeler disputes that Brads and Dolan were more qualified for the Academic Supervisor position than she was. (Doc. 14 at 8.) She argues that Dolan did not even possess one of the qualifications for the job—that the candidate must "hold or qualify for a supervisor's certificate." (*Id.* (quoting Doc. 11-2, Ex. C).) Wheeler also argues that Lacey's assessment of her deficiencies is based on a misrepresentation or unreasonable interpretation of what she said during her interview. (*Id.* at 10-11; Doc. 14-1.) Lastly, Wheeler asserts that her testimony regarding a

8

conversation that she had with a member of Miami Valley's administrative team supports an inference that she did not receive the promotion because she is a woman. (Doc. 14 at 8.)

When a plaintiff in a failure-to-promote case relies upon evidence regarding her qualifications relative to those of the chosen candidate to show pretext, she may demonstrate a genuine issue of material fact through evidence that either (1) the plaintiff's qualifications were "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former," or (2) that plaintiff was both as qualified as, if not better qualified than, the successful applicant and the record contains "other probative evidence of discrimination." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006). In applying this standard, courts must be mindful of the principle that employers are generally "free to choose among qualified candidates," *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987), and that "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996).

Miami Valley argues that Brads and Dolan were objectively more qualified than Wheeler because they each had a year of experience serving as the Chairperson of their academic department, which Wheeler did not have. (Doc. 15 at 4.) In response, Wheeler suggests that Brads and Dolan were "pre-selected" to be Academic Supervisors and were appointed Chairpersons of their departments to give them an "unfair advantage" in the hiring process. (Doc. 14 at 6-7, 9.) As Wheeler fails to present any evidence to support such an inference, however, it must be rejected.

Wheeler also argues that Dolan did not meet the minimum qualifications to be Academic Supervisor because he did not "hold or qualify for a supervisor's certificate" at the time of his

9

application. Wheeler cites evidence showing that Dolan did not receive a supervisor's certificate until September 29, 2012, approximately two months after he was promoted to Academic Supervisor in July 2012. (Doc. 14 at 7.) Dolan was not required to hold a supervisor's certificate, however, but to "hold *or* qualify" for a supervisor's certificate. (Doc. 11-2, Ex. C (emphasis added).) Wheeler has not presented any evidence showing that Dolan was not *qualified* to hold a supervisor's certificate at the time of his application.

Wheeler also argues that, in addition to meeting the minimum qualifications for the position, she should have been promoted because she has a "history of excellent service to Miami Valley over her 28 year career," degrees from Wright State and the University of Dayton, has taught nearly all of the courses offered by Miami Valley, chaired multiple committees, developed curriculums for Miami Valley's courses, and volunteered whenever needed. (Doc. 14 at 9.) Wheeler also disputes Lacey's assessment of her deficiencies. Wheeler does not deny that she spoke to Lacey about the incidents and issues that caused him concern during her interview. Instead, she denies making certain statements (Doc. 14-1, ¶ 4) and argues that Lacey failed to properly grasp the facts regarding the incidents that they discussed (*id*., ¶¶ 2-3).

The dispute regarding what Wheeler said to Lacey and whether Lacey's assessment of her deficiencies was appropriate creates an issue of fact. Only a genuine issue of material fact, however, will preclude summary judgment. *Anderson*, 477 U.S. at 248. A factual dispute is material if it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Here, the dispute regarding Lacey's assessment of Wheeler's deficiencies is material, but it is not genuine because a reasonable jury still could not return a verdict for Wheeler based on the evidence presented.

The dispute is material because it is relevant to whether Wheeler has demonstrated pretext. Miami Valley asserts that Brads and Dolan were more qualified than Wheeler due to both their administrative experience and because they did not have Wheeler's deficiencies. Wheeler claims, however, that Lacey's assessment of her deficiencies is unfounded. *See Wexler*, 317 F.3d at 576 (plaintiff can show pretext by demonstrating proffered reason has "no basis in fact").

Construing the facts in the light most favorable to Wheeler, the Court must assume that Wheeler does not have the deficiencies identified by Lacey. As a result, Miami Valley's proffered nondiscriminatory reason—that it hired Brads and Dolan because they were more qualified—must rest solely on the fact that they had a year of administrative experience that Wheeler did not have. If, nonetheless, no reasonable juror could find in favor of Wheeler, then the factual dispute regarding Wheeler's deficiencies is not "genuine" and Miami Valley is entitled to summary judgment. *See Anderson*, 477 U.S. at 248.

As stated above, one way that Wheeler can demonstrate pretext is by showing that her qualifications were "so significantly better" than Brads' and Dolan's qualifications that no reasonable employer would have chosen them over her. *Bender*, 455 F.3d at 627-28. Wheeler has failed to make this showing. The evidence shows that Brads and Dolan were qualified and their administrative experience makes them a reasonable choice over Wheeler for the Academic Supervisor positions, even taking into consideration her many years of service and involvement in teaching, committee work, and volunteer opportunities.

Putting aside the deficiencies identified by Lacey and construing the facts in the light most favorable to Wheeler, a reasonable juror might find that Wheeler is as qualified as Brads and Dolan to be an Academic Supervisor. A reasonable juror might find, for example, that Wheeler's years of service and other experience compensated for her lack of administrative experience. Wheeler

11

therefore could demonstrate pretext by showing that, in addition to being as qualified as the chosen candidates, the record contains "other probative evidence of discrimination." *Id.* Wheeler asserts that her testimony regarding a conversation with Brian Jackson, a member of Miami Valley's administrative team, provides such evidence. (Doc. 14 at 8.)

Wheeler testified that, in the Fall of 2012, she had a conversation with Brian Jackson, the trade and industry vocational supervisor at Miami Valley. (Doc. 11-1 at 49-54.) Jackson was not involved in the hiring process for the Academic Supervisor positions, but Wheeler thought that he might have insight into why she was not hired because of his role as an administrator. (*Id.* at 50.) Wheeler therefore asked Jackson why he thought that she did not get the position. (*Id.*) Instead of answering that question, however, Jackson asked Wheeler if she thought she was not hired because she was a woman. (*Id.* at 52.) In response, Wheeler said "Yes." (*Id.* at 52.) Wheeler was not sure what, if anything, Jackson then said to her in response. (*Id.*)

This exchange between Wheeler and Jackson merely reflects Wheeler's own belief regarding why she was not hired. There is no evidence from which a reasonable juror could infer that Jackson believed that Wheeler was denied the promotion based on her sex. Wheeler's testimony therefore does not constitute "other probative evidence of discrimination" sufficient to create a triable issue of fact in this case. *See Provenzano*, 663 F.3d at 818; *see also Thompson v. City of Columbus*, No. 2:12-CV-01054, 2014 WL 1814069, at *10 (S.D. Ohio May 7, 2014) (plaintiff's "own belief that she performed well during her interview and should have been hired . . . is insufficient to create a question of fact as to whether the Department discriminated against her").

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Miami Valley's Motion for Summary

Judgment (Doc. 12).   This case is terminated on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, January 20, 2016.

                     s/Thomas M. Rose

                _____
                   THOMAS M. ROSE
              UNITED STATES DISTRICT JUDGE